JOSEPH MILLER ET AL., Respondents, v. E. T. HOFF-
MAN ET AL.; HELEN M. KIMBALL, Appellant.

St. Louis Court of Appeals, May 17, 1887.

1. MECHANIC'S LIENS—PARTNERSHIP—DEATH OF CO-PARTNER—LIMI-
TATIONS.—A surviving partner may, after his co-partner's death,
complete the delivery of materials for a building under a special
contract of the firm to deliver the same, and the limitation on the
lien claim runs from the date of the last delivery under the con-
tract, and not from the date of the co-partner's death.

2. ——— LIEN CLAIM—RUNNING ACCOUNT—MINGLING OF ACCOUNTS.
A surviving partner can not, on the firm account, continue to
furnish materials on running account and take a lien for the whole,
and can not add items, thus furnished on running account, to the
items furnished on special contract, so as to save the lien.

3. ——— SUB-CONTRACTOR'S NOTICE—EVIDENCE.—The notice by a sub-
contractor to the owner must be in writing, and must apprise the
owner who the claimant is, but it is sufficient to show, by inferen-
tial evidence, that the owner received such notice at least ten days
prior to the filing of the lien claim.

4. ——— WORD LOT DEFINED.—The term lot in a city means the
fractional defined subdivision of a block, and the lien claim should
be made against that lot only on which the building is, although
several contiguous lots, belonging to the same owner, are inclosed
together.

APPEAL from the St. Louis Circuit Court, AMOS M.
THAYER, Judge.

*Reversed and remanded.*

TAYLOR & POLLARD, for the appellant: The notice
of lien claim must be in writing and properly signed.
*Schulenburg v. Bascom*, 38 Mo. 188. The service was
not sufficient. *Ryan v. Kelly*, 9 Mo. App. 396. The
service of notice, personally, on the owner, ten days
before filing the lien, is a jurisdictional fact not to be
excused. It is indispensable to a valid sub-contractor's

lien. *Hewitt v. Truitt*, 23 Mo. App. 443. The lien is void, because it embraces two lots clearly marked out and defined on the recorded plat. *Fitzgerald v. Thomas*, 61 Mo. 500; *Williams v. Porter*, 51 Mo. 441; *Wright v. Beasley*, 69 Mo. 549; *Mattack v. Lair*, 32 Mo. 262. The court erred in holding that the plaintiffs could recover for all items furnished before Fathman's death, combined with items furnished after his death on the same account. This objection was made at the trial. *Allen v. Mining & Smelting Co.*, 73 Mo. 688; *Gibson v. Nagel*, 15 Mo. App. 597. Putting these extras with the contract work, furnished and completed more than four months before filing the lien, is not sufficient to rescue the contract work from the four months' limitation. *Schulenburg v. Vrooman*, 7 Mo. App. 134.

JULIAN LAUGHLIN, for the respondents.

ROMBAUER, J., delivered the opinion of the court.

This is an action, by a material man, against a contractor to recover a balance due for materials furnished, and against the owner to enforce a mechanic's lien against the premises hereinafter described. The contractor, although duly served, did not defend. There was a general judgment against the contractor in the trial court for $767.94, being the exact amount claimed; and, also, judgment subjecting lots 19 and 20, of a certain block, to the lien of the judgment. The latter part of the judgment was so modified, by voluntary *remittitur*, as to subject lot 19 only to the plaintiff's lien. From this judgment the defendant owner appeals.

The errors assigned are, that the lien is void under the conceded facts, and the judgment against the property is erroneous as a matter of law; that there is no evidence that the owner was served with notice of the plaintiff's claim of lien, ten days prior to the filing of the lien; that the court gave illegal instructions for the

plaintiff, and refused proper and legal instructions asked by the defendants.

The plaintiff is the surviving partner of Fathman & Miller. The testimony tends to show that the firm entered into a contract with the defendant, Hoffman, who was a contractor with the owner, to furnish certain framed lumber, and other mill material, toward the erection of the defendant owner's house, and that such material entered into the construction of the building, and was reasonably worth the prices charged in the plaintiff's account. The contract price for the lumber was six hundred and seventy dollars, but the amount was swelled by a number of extras to $767.94. The account filed does not separate the items furnished under the special contract from those furnished upon order as extra work.

The petition states that Fathman died December 14, 1885, and this statement the record admits to be true, although the plaintiff states that he did not die until December 16. It is conceded that some of the items, included in the account, were delivered after Fathman's death, and consisted mostly of extras. As to the amount of these items the testimony is not very clear, owing to the fact that the items in the account are not separately dated, and that the omission is not supplied by testimony, and that there is some conflict between the allegations of the petition, which are admitted to be true, and the plaintiff's own testimony as to the date of Fathman's death.

The account is made out in the name of Miller & Fathman, and the lien was filed April 15, 1886, and more than four months after Fathman's death, if the date of his death is December 14, 1885, as stated in the petition. The property sought to be charged with the lien consists of lots 19 and 20, of block 7, and the testimony concedes that the block was platted and recorded long before the defendant owner's contract with Hoffman was entered into, and that the exact boundaries of

such lots are shown on the recorded plat. The testimony, also, concedes that, while the two lots are in one inclosure, the structure, for which the materials were furnished, is situated exclusively on lot 19.

The facts, touching notice to the owner of the plaintiff's claim and intention to file a lien, were shown to be as follows: On April 2, 1886, a written notice of the claim was left at the owner's residence. This notice was in compliance with the statute as to form, and was signed thus: " Miller & Fathman, by Julian Laughlin, their attorney." Miller, at that time, as surviving partner, was administering the partnership estate of Fathman & Miller, and Julian Laughlin was acting as his attorney. No personal service of this notice was made on the owner on April 2, but, subsequently, and prior to April 6, she admitted that she had received it on the day when it was left at the house.

The defendant, upon trial, objected to the introduction of the notice in evidence, as well as to the introduction of the lien paper. The court overruled these objections, of which ruling the defendant complains as erroneous.

We think the notice was formally sufficient. The claimant's name was signed to it by authority, and it advised the defendant from whom it came, and who held the claim. In all these respects it is essentially different from the notice condemned in *Schulenburg v. Bascom* ( 38 Mo. 191 ). The only object of the notice is to secure the owner at least ten days' time to investigate the merits of the claim before he decides whether he will pay it, or permit his property to be subjected to a lien. And while due notice from a sub-contractor to the owner is essential to the validity of the latter's lien claim, the mode of service is immaterial, provided it sufficiently appears that the owner did, in fact, receive the notice at least ten days prior to the time when the lien was filed. Nor do we consider the fact essential, that no personal service was made on the owner of this notice, at least

ten days prior to the filing of the lien, since the testimony virtually concedes that she did receive it, and was advised of its contents, more than ten days prior to such filing. But we are of opinion that the court erred in admitting the account in evidence, which was filed as a lien, and, also, erred in refusing the instruction of the defendant owner, that, on the pleadings and evidence, the plaintiff is not entitled to a mechanic's lien against the property of the defendant, H. M. Kimball. The account, under the plaintiff's own testimony, included items confessedly furnished, both before and after the death of Fathman, and the jury, in their verdict, found a lien for the whole amount of the entire account. On no theory, which we can conceive, can this verdict be permitted to stand. The death of Fathman operated as an immediate dissolution of the firm of Fathman & Miller, and the right of the surviving partner to bind the firm, by contracting further obligations, ceased. *Exchange Bk. v. Tracy*, 77 Mo. 599. The last item furnished by Fathman & Miller, as shown by the account, was furnished December 14, 1885. It is apparent that no other item could have been furnished, after that date, on their account, since, according to the plaintiff's own petition, Fathman died, December 14. The law is clear that the plaintiff could not tack the two accounts together for the purpose of saving his lien. *Livermore v. Wright*, 33 Mo. 31; *Allen v. Mining Co.*, 73 Mo. 693; *Henry v. Mahone*, 23 Mo. App. 83; *Gauss v. Hussman*, 22 Mo. App. 119. A lien account, therefore, which is shown to have been filed, April 15, 1886, is not filed within four months after the furnishing of material on December 14, 1885, and was not admissible in evidence, unless the court was of opinion that the account was good for the items furnished, after that date, in favor of Miller.

The latter view, is, however, equally erroneous. First, because neither the notice nor the lien account, mention Miller as the claimant, but the claimants mentioned are Fathman & Miller, and thus, in that view,

neither the notice nor the account would be a compliance with the requirements of the statute. Next, because the statute makes the filing of a just and true account an indispensable pre-requisite to the acquiring of a lien, and a case of this character is not within the saving clause of section 3182.

The court, also, committed error in submitting the question to the jury, whether the plaintiff was entitled to a lien on both lots, nineteen and twenty. The error became harmless by the subsequent *remittitur* as to lot twenty. And we make the statement in view of a retrial of the cause. It is conceded that the entire struc-ture stands on lot nineteen. The amendment of 1877, now section 3195, of the Revised Statutes, is the only provision of our laws, which enables a contractor, in certain cases therein mentioned, to charge several contiguous lots with one entire lien claim. The law was thus modified to avoid the inconvenience and injustice arising from a state of facts, such as are discussed in *Fitzpatrick v. Thomas* ( 61 Mo. 512 ). In a case like the present, the lien claim can cover only the lot on which the structure stands. The word lot in the law is to be taken in its usual, well defined sense when applied to real estate within a sub-divided city block. It means the fractional part of a block, commonly known as a lot, limited by fixed boundaries on the recorded plat.

Under the rule established in *Oster v. Rabeneau* ( 46 Mo. 595 ), the plaintiff's lien was not necessarily avoided, because excessive as to the quantity of land sought to be subjected to the claim, but the safer course for the plaintiff to pursue is to dismiss his claim as to lot twenty, before a re-trial of the cause.

The case calls for the following additional observations.:

I. If the plaintiff adduces substantial evidence, that part of the items included in the special contract of Fathman & Miller with Hoffman, were furnished within four months next preceding April 15, 1886, the court

may submit the lien claim to the jury, but not otherwise; for items delivered after the death of Fathman, and not within the special contract, no lien claim can be asserted in this action.

The distinction between items covered by the special contract, and those not thus covered is obvious. As to the former, the death of Fathman could not terminate the obligations of Miller. The contract being entire, he was bound to complete it, and, when completed, it enured to the benefit of the firm. As to the latter, the death of Fathman determined Miller's authority. He was under no obligation to fill orders, though received during the life of the firm, and had no power to use firm property for that purpose on the firm account. If he used it on his individual account, as, in contemplation of law, he is conclusively presumed to have used it, he could not tack the two contracts together so as to make them form one entire lien claim.

II. The testimony of the deputy sheriff, that the defendant admitted to have received a written notice of the plaintiff's lien claim at least ten days before the filing of the account, is competent evidence, but the sheriff's return, stating personal service on April 2, under the facts sworn to by the deputy, is clearly untrue, and the plaintiff should not again attempt to prove the fact by this discredited return.

The judgment is reversed and the cause remanded. Thompson, J., concurs; Lewis, P. J., is absent.