NAUGHTON & DOLAN SLATE COMPANY, Appellant, v. DAVID NICHOLSON et al., Respondents.

St. Louis Court of Appeals, December 16, 1902.

Mechanic's Lien: CONTRACTOR. A subcontractor was informed several months before by the contractor that they (the contractors) had had trouble with the architect, and the subcontractor knew that the work on a house had been abandoned; this was sufficient to put him upon his inquiry as to whether or not the contract with the owner had been abandoned, and the work done thereafter by the subcontractor could not be considered done under his contract with the contractors, for the purpose of determining the time of filing the lien.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

### STATEMENT.

In the fall of 1894, David, William and Theodore Nicholson, a partnership doing business under the firm name of Nicholson Brothers, contracted in the name of the firm with Charles N. Stevens to construct a two-story brick residence and porch on a lot in the city of St. Louis. The title to the lot was in Phoebe Stevens. Phoebe Stevens was not a party to the contract.

The contention of appellant is that Charles Stevens in the making of the contract acted as the agent of his wife, Phoebe.

On October 4, 1894, Nicholson Brothers sublet to plaintiffs the slating of the house and porch. In January or February, 1895, Nicholson Brothers had some trouble with the architects and abandoned work on the building in the latter part of February, and dissolved the partnership by giving up the business in which they were engaged and by each member of the partnership going his own way. Afterwards Stevens contracted with Smith Brothers to finish the house, which they did.

Plaintiffs furnished the material and did all the work called for by their contract by January 27, 1895, except about three hours work on the roof of the building and the roofing of the porch. They left off work on January 27 because, as P. S. Naughton, one of the partners, testified, there were no facings around the dormer windows and the porch was not ready for roofing. This witness further testified that in March or April he passed by the house and saw that the doors and windows were boarded up. Afterwards on May 27 when he was again passing by the house he discovered that it was open and immediately went for one of his workmen and had the roof of the house completed on that day which required about three hours work. In

June following Smith Brothers notified him that the porch was ready for roofing and he went to work and roofed the porch and presented his bill to Mr. and Mrs. Stevens, after it had been approved by the architects, and Stevens gave him a check for the amount of the bill, $63.59.   He also testified that the work done by his firm on May 27th and prior thereto was done under the contract with Nicholson Brothers.

Plaintiffs agreed with Nicholson Brothers to do all the slating for $450.   Within four months after May 27, 1895, plaintiffs filed their mechanic's lien for $386.41 and commenced this suit to enforce the same before a justice of the peace, where it had a personal judgment against Nicholson Brothers and against defendant  Stevens to enforce its mechanic's lien.   From this judgment defendant Stevens alone appealed.

On a trial anew in the circuit court, at the close of plaintiff's case, the jury was instructed that plaintiffs had no lien, and judgment was given for defendants Stevens and wife.   After an unsuccessful motion for a new trial plaintiffs appealed.

*James M. Loring* for appellant.

The husband was the agent of the wife in this case. The alleged dissolution of the . firm of Nicholson Brothers could not revoke the rights of plaintiff already acquired under his contract, nor his right to complete his work. These two points have already been decided by this court in the plaster suit against the same house, adversely to the owners.

*Ashley Cabell, Theodore Rassieur* and *H. A. Loevy* for respondents.

(1)    The Nicholson abandonment of the contract with owner Stevens and their dissolution of firm, terminated their contractual relationship with him and also terminated their contract with plaintiff. Lyon v. Railroad, 127 Mass. 101; Basham v. Toors, 51 Ark. 309;

Henderson v. Sturgis, 1 Daly (N. Y.) 336. (2) The dissolution of the Nicholson firm broke the continuity of appellant's account with that firm in March, 1895, and lien should have been filed within four months from time of dissolution. Greenway v. Turner, 4 Md. 396; Henry v. Rice, 18 Mo. App. 514. (3) No notice of abandonment by Nicholson firm or of its breach of contracts to its sub-contractors, was necessary. Greenway v. Turner, 4 Md. 396.

BLAND, P. J.—1. In McDonnell v. Nicholson, 67 Mo. App. (St. L.) 408, a suit by a subcontractor under Nicholson Brothers to do the plastering on this same building, it was held, under substantially the same evidence as was offered by plaintiff on the trial of the case at bar to prove the agency of Charles Stevens, that the evidence was sufficient to prove such agency; hence, this question need not be discussed in this opinion.

2. The point relied on by respondents as justifying the court in taking the case from the jury is that the lien account of plaintiffs was not filed within four months after the completion of all the work done under its contract with Nicholson Brothers. In support of this contention it is insisted that the work done on May 27 to finish the roof of the house was a mere subterfuge and done for the purpose of enabling plaintiffs to file a mechanic's lien, and that at that date the contract between Nicholson Brothers and Stevens had ceased to exist.

The evidence of P. S. Naughton, uncontradicted by any witness, does not tend to show that the work done on the roof on May 27 was for the mere purpose of enabling the plaintiff to file a mechanic's lien, on the contrary it tends to show that the roof had been left in an incomplete condition; that the carpenter work on the dormer windows was in such an unfinished state that the slating around those windows could not be put on at the time the other work was done and that plaintiff had no access to the house to complete the work on the roof before the day the work was done.

There is no evidence tending to prove that plaintiff knew or had been informed that the original contractors had entirely abandoned work on the house.

It is unquestionably the law that if on May 27 the contract between Nicholson Brothers and Stevens was not in existence, that is, that on or prior to that date it had been wholly abandoned, and plaintiff had notice of the fact, or notice of such facts as should have put it on inquiry, the work performed on that day by plaintiff was not done under its subcontract with Nicholson Brothers and will not serve to bring the last item of its account against Nicholson Brothers down to that date. Gerard B. Allen & Co. v. The Frumet Mining & Smelting Co., 73 Mo. 688; Henry v. Mahone, 23 Mo. App. (K. C.) 83; Kearney v. Wurdeman, 33 Mo. App. (St. L.) 447; Henry v. Rice, 18 Mo. App. (K. C.) 1. c. 514; Lyon v. Railroad, 127 Mass. 101; Badger Lumber Co. v. Knights of Pythias, 157 Mo. 366.

The evidence does not show the precise date when the new contract was made by Stevens with Smith Brothers, but it does show that Smith Brothers were at work on the building prior to May 27, the date of the last item in plaintiff's lien account. There is no evidence to show that plaintiff knew or had notice of the change in contractors. It had been informed by one of the Nicholsons several months before, that they (Nicholson Brothers) had had trouble with the architect and knew as a fact that the work had been abandoned and the house boarded up in February previous. This was sufficient to have put a prudent man on inquiry. On May 27, plaintiff may have supposed that the contract of Nicholson Brothers was still in force, but on account of the information it had, it was bound to know that it was in force in order to charge the item for work on that day in its lien account. The contract of Nicholson Brothers having been wholly abandoned prior to May 27, the item of that date can not serve to bring the lien account within the statutory period in which it might have been filed as a lien.

We conclude that the lien account was filed out of time, and the judgment is affirmed. *Barclay* and *Goode*, *JJ.*, concur; the former on the ground that there was evidence to support the judgment on the theory that the lien was filed too late.